## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LATORIA GEORGE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN E. SANDERS, in his official capacity as East Baton Rouge Parish Ward 3 District 2 Justice of the Peace,<br><br>Defendant. | Case No.  3:25-cv-168<br><br>Complaint – Class Action |

## CLASS ACTION COMPLAINT

### I.     PRELIMINARY STATEMENT

1.     Eviction proceedings in Louisiana are high-stakes and often complex legal matters involving overlapping local, state, and sometimes federal laws as well as a variety of procedural requirements and substantive defenses.

2.     Eviction can be economically devastating for families, impacting access to employment and future housing, and negatively affecting the physical and mental health of adults and children in a household.

3.     There are nearly 400 elected justices of the peace in Louisiana, who preside over most eviction proceedings held throughout the state. District courts and city courts also hear evictions.

4.     Louisiana law allows evictions to be handled summarily through a rule to show cause. State law governing summary process dictates that the rules of ordinary proceedings, including the rules of evidence, ordinarily apply in such proceedings.

5.      Nevertheless, Justice of the peace courts are not courts of record and need not observe the rules of evidence. Justices of the peace receive limited legal training and do not need to be attorneys.

6.      State law permits justices of the peace to charge and collect filing and other fees in eviction proceedings that the justices use to supplement their salaries and to pay for basic operating expenses of their courts.

7.      This statutory funding structure for justices of the peace violates Plaintiff's right to a disinterested and impartial tribunal because it creates a personal and institutional financial conflict of interest for justices of the peace to rule in favor of the landlord.

8.      State law also limits the appellate rights of tenants appearing only before justices of the peace, so a landlord's choice to file an eviction petition before a justice of the peace means that the tenant has more limited appellate rights than if the landlord files in another venue.

9.      Defendant Sanders, one of six justices of the peace in East Baton Rouge Parish, is the Justice of the Peace for Ward 3, District 2.[1]

10.     Justice of the Peace Sanders hears between 300 and 400 eviction cases per month.

11.     Like all justices of the peace in Louisiana, and pursuant to state law, Defendant Sanders funds his salary and his court's operating costs from fees he collects in eviction proceedings.

12.     Defendant Sanders has a personal financial conflict of interest when he presides

---

[1] In East Baton Rouge Parish, there are six justices of the peace who preside over distinct districts within two wards based on their geographic location. Within the Parish, there are two wards (Wards 2 and 3) each with three districts (Districts 1–3). *See Justices of the Peace*, EAST BATON ROUGE PARISH, https://www.brla.gov/2114/Justices-of-the-Peace (last visited Feb. 23, 2025); *Justice of the Peace Constable Districts*, EAST BATON ROUGE PARISH, https://drive.google.com/viewerng/viewer?embedded=true&url=https://ebrgis.maps.arcgis.com/sharing/rest/content/items/c61e1f50a462489cba06b7a80c43afdd/data (last visited Feb. 23, 2025).

over eviction proceedings because the fees he generates in those proceedings pay his salary.

13.     Defendant Sanders also has an institutional financial conflict of interest when he presides over eviction proceedings because the fees he generates fund a substantial portion of the operating costs and expenses of the court, which he controls and oversees.

14.     Like all justices of the peace in Louisiana, Defendant Sanders's dependence on filing fees to pay his salary and the court's operating expenses creates an incentive for him to maximize the number of eviction cases filed in his court by ruling in favor of landlords, who select where to file a petition for eviction. His reliance on writ of execution fees, which he can only collect after issuing a judgment of eviction, creates an incentive for him to enter judgments of eviction against tenants.

15.     These financial conflicts of interest are created by the statutory funding structure for justice of the peace courts, which authorizes Defendant Sanders, like all justices of the peace in the state, to charge filing fees and writ of execution fees that are "retained by the justice of the peace for compensation and operational expenses of the office and court." La. Rev. Stat. § 13:2590(A)(2)–(3); La. Rev. Stat. § 13:2590(B)(1).

16.     The statutory funding structure creates a personal conflict of interest because the justices of the peace supplement their salaries with fees. It creates an institutional conflict of interest because the justice of the peace courts could not operate without the collection of these fees.

17.     Plaintiff, on behalf of herself and a class of similarly situated tenants who are defendants in eviction proceedings before Defendant Sanders, seeks a declaration that La. Rev. Stat. §§ 13:2590(A)(2)–(3) and 3:2590(B)(1) violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as applied to tenants in eviction proceedings before

Defendant Sanders.

18.    Plaintiff also seeks on behalf of the putative class a declaration that La. Code Civ. Proc. art. 4924(C), which limits the appellate rights of only tenants appearing in justice of the peace courts, violates the Equal Protection Clause of the Fourteenth Amendment on its face.

19.    Under this provision, a tenant who wants to appeal an eviction judgment entered by any justice of the peace court throughout the state is entitled only to a trial de novo before the district court but has no further appellate rights. La. Code Civ. Proc. art. 4924(A)–(C).

20.    By contrast, a tenant who wants to appeal an eviction judgment originally entered by a city court or district court judge is entitled to appeal to the Louisiana Court of Appeal and, ultimately, to the Louisiana Supreme Court.

21.    There is no statutory mechanism for a tenant to remove or transfer an eviction case from a justice of the peace court to a city court or district court where the tenant would have the full appellate rights guaranteed all other tenants facing eviction in Louisiana.

22.    La. Code Civ. Proc. art. 4924 thus affords similarly situated tenants different appellate rights depending on whether a landlord originally filed a petition for eviction in front of a justice of the peace or the district court or city court.

23.    There is no rational basis for affording tenants whose petition for eviction was originally filed before a justice of the peace fewer appellate rights than tenants whose petition for eviction was originally filed in the district court or city court.

24.    Combined, the financial conflicts of interest that inhere in justice of the peace courts and the unequal access to appellate rights granted to tenants in justice of the peace courts create a two-tiered system of justice in Louisiana.

25.    Tenants, like Plaintiff, who are defendants in eviction proceedings before

4

Defendant Sanders are not afforded due process or equal protection under the law.

## II.     JURISDICTION AND VENUE

26.     This is a civil rights action arising under 42 U.S.C. § 1983, 28 U.S.C. §§ 2201–02, and the Fourteenth Amendment to the United States Constitution.

27.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

28.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Baton Rouge, Louisiana, within this judicial district.

## III.     PARTIES

### A.     Plaintiff

29.     Plaintiff Latoria George is a resident of Baton Rouge, Louisiana. She is currently a defendant in eviction proceedings before Defendant Steven E. Sanders, Justice of the Peace for Ward 3, District 2 in East Baton Rouge Parish. The property from which Plaintiff George is being evicted is located in Baton Rouge, LA, within the jurisdictional bounds of the Ward 3, District 2 Justice of the Peace Court.

### B.     Defendant

30.     Defendant Steven E. Sanders is the Justice of the Peace for Ward 3, District 2 in East Baton Rouge Parish in Louisiana. He is sued in his official capacity as the Justice of the Peace for Ward 3, District 2 in East Baton Rouge Parish.

## IV.     STATEMENT OF FACTS

### A.     Evictions in East Baton Rouge Parish in Louisiana.

31.     East Baton Rouge Parish, which includes the City of Baton Rouge, Louisiana, has

a total population of over 456,000 people.[2]

32.    The median household income in East Baton Rouge Parish was $61,387 in 2020, and 20% of the population lives in poverty.[3]

33.    In the City of Baton Rouge, the state capitol and the seat of East Baton Rouge Parish, approximately 9.11 households are evicted from their homes every day, constituting approximately 25% of the total number of evictions occurring throughout the State of Louisiana each day.[4]

34.    Every year, approximately 6.45% of all renter homes in the City of Baton Rouge experience an eviction.[5] According to the most recent available data, there were 3,335 evictions in the City of Baton Rouge in 2016.[6]

35.    Black residents of East Baton Rouge Parish are disproportionately impacted by evictions.

36.    Black women and children experience the highest eviction rates nationwide and are

---

[2]    *East Baton Rouge Parish, Louisiana*, U.S. CENSUS BUREAU, https://data.census.gov/profile/East_Baton_Rouge_Parish,_Louisiana?g=050XX00US22033 (last visited Feb. 23, 2025).

[3]    "Poverty" is defined by the U.S. Census Bureau according to the Office of Management and Budget's ("OMB") Statistical Policy Directive 14. *See QuickFacts: East Baton Rouge Parish, Louisiana*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/eastbatonrougeparishlouisiana/IPE120223 (last visited Feb. 23, 2025).

[4]    Baton Rouge Eviction Statistics, EVICTION LAB (2016), https://evictionlab.org/map (enter "East Baton Rouge Parish, Louisiana" in the search bar; then click "View More Data").

[5]    *Id.*

[6]    *Id.*

exposed at disproportionate rates to the negative consequences of eviction.[7]

37.     During an eviction, families lose their homes and sometimes their possessions. They may be forced to leave the stability and familiarity of their communities, which also disrupts the routines and education of children.

38.     An eviction may also compound and extend financial insecurity. Even though evictions in Louisiana result in judgments for possession only, alleged overdue rent payments, which often include contested junk fees and associated court costs, can be reported to credit bureaus or consumer reporting agencies, reducing a person's credit score and access to loans or other financial assistance well into the future.

39.     A court-ordered judgment of eviction can make it more difficult to obtain housing and employment.

40.     Evictions can also profoundly impact a person's physical and mental health, creating "prolonged periods of intense housing precarity . . . and acute stress."[8]

41.     Empirical studies have concluded that evictions can contribute to homelessness and even premature death.[9]

42.     Empirical evidence "strongly indicates that eviction is not just a condition of

---

[7] Peter Hepburn, Renee Louis, and Matthew Desmond, *Racial and Gender Disparities among Evicted Americans*, EVICTION LAB (Dec. 16, 2020), https://evictionlab.org/demographics-of-eviction/; Nick Graetz, et al., *Who is Evicted in America*, EVICTION LAB (Oct. 3, 2023), https://evictionlab.org/who-is-evicted-in-america/.

[8] Nick Graetz, et al., *The impacts of rent burden and eviction on mortality in the United States 2000–2019*, 340 SOC. SCIENCE & MED. 116398, 2 (2024).

[9] *Protect Tenants, Prevent Homelessness*, NAT'L LAW CTR. ON HOMELESSNESS & POVERTY 15, 18, https://homelesslaw.org/wp-content/uploads/2018/10/ProtectTenants2018.pdf.

poverty, it is a cause of it."[10]

**B.    Eviction proceedings under Louisiana law.**

43.    A landlord who believes a tenant has violated a residential lease term can try to resolve the dispute informally with the tenant, mediate the dispute, or file a petition for eviction.

44.    If a landlord files a petition for eviction, also known as a "Rule for Possession" under Louisiana law, he or she must do so before a court of competent jurisdiction.

45.    In certain areas of East Baton Rouge Parish, justice of the peace courts and district courts hold concurrent jurisdiction.

46.    In the City of Baton Rouge and other cities of a certain size within the parish, city courts and district courts hold concurrent jurisdiction.

47.    Eviction proceedings are summary proceedings, requiring the court to hold a hearing "with rapidity, within the delays allowed by the court," after the petition for eviction is served on the tenant. *See* La. Code Civ. Proc. art. 2591.

48.    The rules of ordinary proceedings, including the rules of evidence, apply in summary proceedings unless otherwise provided by law. La. Code Civ. Proc. art. 2596.

49.    Eviction proceedings are for possession only. To obtain a judgment for past due rent or other damages, a landlord would need to file a separate ordinary or small claims proceeding.

50.    Eviction proceedings can be initiated and adjudicated within as few as five calendar days if notice is waived. This means that an eviction filed and served on a Monday could be heard on Thursday and a writ of execution could be issued to physically remove the tenant by Friday.

51.    A landlord must give the tenant five days' notice from the date of service to vacate

---

[10] *Why Eviction Matters*, Eviction Lab, https://evictionlab.org/why-eviction-matters/#eviction-impact (last visited Feb. 23, 2025).

the premises, but the notice requirement can be waived in a lease agreement. La. Code Civ. Proc. art. 4701.

52.     Most leases in use by landlords in East Baton Rouge Parish waive notice.

53.     The landlord then files a petition for eviction in the form of a Rule for Possession with a court of competent jurisdiction over the property. La. Code Civ. Proc. art. 4731.

54.     If a landlord files a petition for eviction, the court must issue a rule to show cause stating the grounds for eviction and ordering the tenant to appear at a specified date and time no earlier than the third day after service on the tenant. La. Code Civ. Proc. art. 4731; La. Code Civ. Proc. art. 4732.

55.     The right to a hearing is automatic and does not require an affirmative filing by the tenant.

56.     If the court decides in favor of the landlord at the hearing, the court issues a judgment of eviction ordering the tenant to vacate the property. La. Code Civ. Proc. art. 4732.

57.     Once a judgment of eviction is rendered, the tenant has 24 hours to comply by vacating the premises. La. Code Civ. Proc. art. 4733.

58.     If the tenant does not vacate, the court must issue a writ of execution, also known as a warrant for possession, commanding the constable to seize the property, remove the tenant, and deliver the property to the landlord. La. Code Civ. Proc. art. 4733. This can occur as quickly as in 24 hours. *Id.*

59.     Most evictions are filed for alleged past due rent. However, some evictions are filed for other fact-specific contractual breaches, such as alleged damage of property or unauthorized occupants.

60.     A variety of exceptions and affirmative defenses are available to a tenant facing

eviction. For example, a tenant facing eviction for alleged past-due rent might argue that notice was insufficient, that rent is owed instead by a subsidy provider, that the tenant is entitled to a disability accommodation, or that deductions should be applied for out-of-pocket repairs.

61.    Regardless of the alleged reason for the eviction, evictions are complex legal matters that require a court to analyze multiple overlapping local, state, and sometimes federal laws.

62.    Eviction proceedings become more complex when the tenant receives a federal subsidy, as there are dozens of federal subsidy programs, each with its own rules governing evictions.

**C.    Justices of the peace have jurisdiction to hear eviction proceedings in Louisiana.**

63.    There are approximately 390 justices of the peace in Louisiana's 64 parishes.

64.    Justices of the peace are elected officials who "take[] the oath required by the Constitution" before discharging their duties. *See* La. Rev. Stat. § 13:2581; La. Rev. Stat. § 13:2582(B).

65.    Justices of the peace are not required to serve full-time and can hold other employment to earn additional income while holding office.

66.    To qualify for a justice of the peace position, a person must obtain "a high school diploma or its equivalent," "be of good moral character," and be "able to read and write the English language correctly." La. Rev. Stat. § 13:2582.

67.    A justice of the peace is not required to be a lawyer. *See* La. Rev. Stat. § 13:2582.

68.    Justices of the peace are required only to undertake one training course every other year, whose content is prescribed by the Attorney General's Office and "shall include as much as practicable of justice of the peace venue, jurisdiction, elements of a cause of action, limitation of

actions, conduct of trials, trial demonstrations, the duties, functions, and responsibilities of their respective offices, and such other subject matter as he may prescribe." La. Rev. Stat. § 49:251.1(A)–(B), (E).

69.     The manual provided to justices of the peace by the Louisiana Attorney General's office is updated only periodically, contains approximately ten pages on evictions, and does not include any relevant or even binding case law governing evictions.[11]

70.     Justices of the peace are courts of limited jurisdiction, *see* La. Code Civ. Proc. art. 4911, that generally "function as small claims courts in rural areas and in municipalities in which there is no city court."[12]

71.     A justice of the peace can hold court at an office, personal residence, business establishment, or any other location that does not sell alcohol. La. Rev. Stat. § 13:2585.

72.     Justices of the peace are authorized to hear residential evictions, "regardless of the amount of monthly or yearly rent or the rent for the unexpired term of the lease." La. Code Civ. Proc. art. 4912(A)(1); La. Rev. Stat. § 13:2586(A).

**D.     Procedural and appeal rights in justice of the peace courts are limited.**

73.     A landlord can elect to file a petition for eviction in any court of competent jurisdiction, including justice of the peace courts, district courts, and city courts, and the landlord's choice of venue has tangible consequences for the tenant.

74.     A landlord's choice of court when initiating an eviction action determines the tenant's procedural rights and protections during the eviction proceedings.

---

[11] *See Louisiana Justice Court Training Manual*, LA. DEP'T JUST. 151–59 (2020), http://www.lajpc2.com/manual/Justice%20Court%20Manual%207th%20Edition.pdf.

[12] *Id.* at 4.

75.     Justice of the peace courts provide tenants with fewer procedural protections than tenants in eviction proceedings before district courts and city courts.

76.     Hearings before a justice of the peace are "informal." La. Code Civ. Proc. art. 4921.2.

77.     The technical rules of evidence are "relaxed" in hearings before justice of the peace courts. La. Code Civ. Proc. art. 4921.2.

78.     Justice of the peace courts are not courts of record.

79.     Written pleadings are not required in a proceeding before a justice of the peace, and a party "may state the claim, exceptions, defenses, or other pleas orally . . . ." La. Code Civ. Proc. art. 4917(A).

80.     Tenants brought into eviction proceedings before a justice of the peace court in East Baton Rouge Parish, rather than before the 19th Judicial District Court or the Baton Rouge City Court, thus have fewer procedural rights and protections.[13]

81.     As a result of the limited process available to tenants, eviction proceedings in the justice of the peace courts are resolved more quickly than those held in city court or district court.

82.     The difference in procedural protections granted to tenants in eviction proceedings before justices of the peace, the relatively shorter duration of eviction proceedings in justice of the peace courts, and—as discussed below, the fact that justices of the peace are not financially disinterested judges—may incentivize landlords to file a petition for eviction with a justice of the peace court rather than in a district court or city court.

---

[13] Some of the justices of the peace in East Baton Rouge Parish, including Defendant Sanders, share small, overlapping areas of jurisdiction with the Baton Rouge City Court. *See* La. Rev. Stat. § 13:2602 (justice of the peace courts in East Baton Rouge Parish share concurrent jurisdiction with city courts when territory is annexed into the municipality).

i. <u>A landlord's choice of venue determines the tenant's trial and appellate rights.</u>

83.    A tenant's trial and appellate rights are also determined by where a landlord chooses to file an eviction action.

84.    The justice of the peace court tenant's unequal access to trial and appellate rights is a result of state law. La. Code Civ. Proc. art. 4924 permits a tenant in an eviction proceeding before a justice of the peace court only to petition for a trial de novo in the district court, with no further right to appeal from the district court's judgment.

85.    By contrast, a tenant in eviction proceedings initiated in the first instance before a district court can directly appeal a judgment of eviction to the court of appeal. *See* La. Code Civ. Proc. art. 2087 (devolutive appeal); La. Code Civ. Proc. art. 4735 (suspensive appeal).

86.    A tenant in eviction proceedings initiated in the first instance before a city court can also directly appeal a judgment of eviction to the court of appeal. La. Code Civ. Proc. art. 5001 (devolutive appeal); La. Code Civ. Proc. art. 4735 (suspensive appeal).

87.    Additionally, the law does not provide a procedural vehicle for a tenant to transfer an eviction case from a justice of the peace court to a court with concurrent jurisdiction wherein the tenant would have full trial and appellate rights.

88.    By contrast, in other courts of limited jurisdiction, a litigant may choose to remove the case to another venue where they will have full procedural rights. *See, e.g.,* La. Rev. Stat. § 13:5204(B) (permitting a defendant in small claims court to transfer their case to the "regular civil court" to preserve appellate rights).

89.    A landlord's choice to initiate eviction proceedings before a justice of the peace therefore can dictate the tenant's ability to obtain a formal trial, in the first instance or ever. Where the tenant can access a trial de novo in the district court under state law, the tenant has no right to

appeal a judgment of eviction beyond the trial de novo.

90.    A tenant in eviction proceedings before a justice of the peace in East Baton Rouge Parish does not have the same right to a formal trial, including the protections of the rules of evidence or an on-the-record hearing, as a tenant in eviction proceedings in the 19th Judicial District Court or in one of the city courts.

91.    To access a trial with these protections and avoid displacement in the meantime, a tenant in eviction  proceedings before a justice of the peace would need to file a petition for a trial de novo in another court within twenty-four hours of the justice's judgment of eviction.[14]

92.    To stay in their home while awaiting the trial de novo, the tenant would likely need to pay a security bond also within twenty-four hours of the adverse ruling.

93.    As a practical matter, these requirements are next to impossible to navigate without an attorney.

94.    By contrast, a tenant whose landlord filed an eviction action in the 19th Judicial District Court or in the Baton Rouge City Court is not required to pay the costs of a pleading or security bond to access a formal trial on their eviction. Instead, the formal trial gets scheduled automatically, and the tenant is permitted to remain in their home while awaiting trial without payment of a bond.

95.    A trial de novo, the only option available to tenants in justice of the peace courts,

---

[14] Even though a litigant has 15 days to file a petition for trial de novo under the law, the justice of the peace's judgment of eviction can be executed, and the tenant can be physically removed from the property in 24 hours. *Compare* La. Code Civ. Proc. art. 4925 (delay for filing suit for trial de novo is 15 days), *with* La. Code Civ. Proc. art. 4733 (tenant must comply with judgment of eviction within 24 hours). Requesting a trial de novo requires a tenant to file a new action in a different court, pay court costs or navigate the complicated requirements of an in forma pauperis filing, and typically pay a bond to suspend the judgment of eviction while awaiting the trial de novo. *See* La. Code Civ. Proc. art. 2124.

does not afford the tenant the same rights as an appeal. The right to a trial de novo from a justice of the peace court simply provides the litigant access to the same formal, on-the-record hearing, with evidentiary rules and procedural protections, that they would have had in the first place in eviction proceedings in the district court or city court.[15] Far from a "second bite at the apple," a trial de novo (if a tenant can access it) is the <u>first</u> and <u>only</u> opportunity the tenant has to raise defenses in a formal court of law.

96.     By contrast, an appeal as of right afforded to litigants in district court and city court provides an opportunity to raise assignments of error based on the trial court record before a panel of experienced appellate judges removed from the pressures of the courtroom.

97.     This right to appellate review of the trial court record, and the right to a formal trial, is denied only to tenants whose landlords initiate evictions in justice of the peace courts.

ii.     <u>The limited right to appeal afforded to tenants in justice of the peace courts impacts their ability to fully and fairly litigate their eviction proceedings.</u>

98.     Requesting a trial de novo from a judgment of eviction in a justice of the peace court is a burdensome administrative undertaking for tenants because, as a practical matter, it must be undertaken within 24 hours of a judgment of eviction.

99.     Even if a tenant manages to navigate these burdensome procedural and financial requirements to obtain a trial de novo, the tenant's right to the protections of a formal court of law is limited. Though the trial de novo in the district court is on the record and the rules of evidence apply, the district court's decision is unreviewable.

---

[15] In practice, it is challenging for tenants to seek a trial de novo in the district court within the 24-hour timeframe between the issuance of the eviction judgment and when the landlord can seek a writ of execution to force the tenant to leave the premises. *See* La. Code Civ. Proc. art. 4733. It is also difficult for a tenant to stay the eviction judgment pending a trial de novo either by obtaining a stay order from the district court within the 24-hour timeframe or by paying a financially burdensome suspensive bond.

100.    As a result of the difficulties inherent in tenants seeking a trial de novo, and the limitations of the trial de novo itself, a tenant in eviction proceedings before a justice of the peace court litigates their eviction proceeding knowing that they do not have a full and functional right to appeal.

**E.    State law establishes the funding structure for justice of the peace courts.**

101.    State law authorizes justices of the peace to supplement their salaries and pay the operating costs of their courts through filing fees and writ of execution fees.

102.    Under state law, East Baton Rouge Parish must pay justices of the peace within its jurisdiction a salary that is no "less than thirty dollars per month." *See* La. Rev. Stat. § 13:5802.

103.    The legislature may also appropriate "an additional salary" for justices of the peace in the same amount as the parish, but not to exceed one hundred dollars per month, "provided funds are available and appropriated by the legislature." La. Rev. Stat. § 13:2591.

104.    State law authorizes justices of the peace to supplement their salary and pay for the courts' operating expenses through the collection of filing and other fees in all civil matters, including evictions.

105.    La. Rev. Stat. § 13:2590(A)(2) and (3) set forth the maximum amount of filing and writ of execution fees justices of the peace can charge in eviction proceedings.

106.    La. Rev. Stat. § 13:2590(A)(2) permits justices of the peace to "demand and receive up to" $120 per petition for eviction and an additional $20 for each additional defendant.

107.    La. Rev. Stat. § 13:2590(A)(3) authorizes justices of the peace to charge up to $60 for a writ of execution and $20 per additional defendant.

108.    Justices of the peace can issue a writ of execution in an eviction proceeding and charge the associated writ of execution fee only if they have granted the judgment of eviction in

that case.[16]

109.    Under La. Rev. Stat. § 13:2590(B)(1), justices of the peace retain 50 percent of the filing and other fees they collect "for compensation and operational expenses of the office and court" and disburse 50 percent to the constable for the constable's "compensation and operational expenses."

110.    This funding structure creates an incentive for justices of the peace to induce landlords to file more petitions for eviction in their courts so that they can collect more filing fees.

111.    The funding structure also creates an incentive for justices of the peace to issue judgments in favor of the landlord in more cases so that they can collect more writ of execution fees.

**F.    Defendant Sanders, the Justice of the Peace for Ward 3, District 2 in Baton Rouge, Louisiana, exercises judicial and executive functions over his court.**

112.    Defendant Sanders is one of six elected justices of the peace in East Baton Rouge Parish.[17]

113.    He was first elected justice of the peace in 1997.

114.    Defendant Sanders is Justice of the Peace for Ward 3, District 2 in East Baton Rouge Parish, and he is the only justice in that court, serving as its "agency head."[18]

115.    He maintains an office at 5627 Superior Drive, Suite A-1 in Baton Rouge, LA

---

[16] If the tenant does not vacate within 24 hours of the judgment of eviction, the justice of the peace must issue a writ of execution ordering the constable to evict the tenant. La. Rev. Stat. § 13:2590(A)(3); La. Code Civ. Proc. art. 4733.

[17] *See* La. Stat. Ann. § 13:2581 (justices of the peace "shall be elected as provided by law").

[18] *See* Steven E. Sanders, *Annual Financial Statements Year Ended December 31, 2023*, LA. LEG. AUDITOR                     4, https://app2.lla.state.la.us/publicreports.nsf/0/86d112c4dc81a47186258b240078fd08/$file/00004928.pdf?openelement&.7773098 (last visited Feb. 23, 2025).

70816, from which he holds court.

116.    Like all justices of the peace in Louisiana, Defendant Sanders possesses executive and judicial powers over his court.

117.    In his judicial capacity, Defendant Sanders is responsible for impartially adjudicating the cases that come before his court.

118.    Defendant Sanders exercises his judicial function as Justice of the Peace for Ward 3, District 2 when he presides over eviction proceedings, including the proceedings of Plaintiff and putative Class members.

   a.  Defendant Sanders issues a rule to show cause stating the alleged grounds for an eviction.
   b.  He manages his case docket by scheduling eviction hearings.
   c.  He mediates alternatives to issuing a judgment of eviction, such as if the tenant can pay in full at the hearing.
   d.  If he finds in favor of the landlord during an eviction proceeding, Defendant Sanders issues a judgment of eviction.
   e.  He may also determine a payment schedule with the landlord and the tenant after issuing a judgment of eviction.
   f.  If the tenant does not vacate the premises within 24 hours after a judgment of eviction is entered, Defendant Sanders issues a writ of execution ordering the constable to remove the tenant.
   g.  He typically shifts court costs and fees from the landlord to the tenant in his judgment.

119.    In his executive capacity, Defendant Sanders is responsible for the orderly administration of the court.

120.    Defendant Sanders also exercises his executive function in eviction proceedings brought before him, including eviction proceedings of Plaintiff and putative Class members.

   a.  Defendant Sanders decides how much to charge in court fees in eviction proceedings, up to the statutory maximum.
   b.  He collects court fees, including filing fees and writ of execution fees.
   c.  He creates a budget for the Ward 3, District 2 Justice of the Peace Court.

    d.  He determines how many employees are needed to run the justice of the peace court and what overhead costs are required.

    e.  He determines how to allocate the fees he collects from evictions and writs of execution between his salary and the operating costs of the court, such as employee salaries, overhead expenses, as well as fees owed to the clerk of court and the constable.

**G.    Defendant Sanders relies on filing fees and writ of execution fees to pay his salary and to offset the operating costs of his court.**

121.    Like all justices of the peace in Louisiana, Defendant Sanders depends on filing and writ of execution fees in Plaintiff's and putative Class members' eviction proceedings to pay his salary and court operating costs.

122.    Between 2019 and 2023, the amount that East Baton Rouge Parish and the State of Louisiana collectively appropriated to pay for Defendants Sanders' salary was approximately $5,000 annually, an amount insufficient to pay for the salary that he earned in each of those years.

123.    Between 2019 and 2023, Sanders derived between 85%[19] and 97.6% percent of his salary and the court's operating budget from court fees.

---

[19] The percentage of total revenue that Defendant Sanders derived from filing fees in 2020 and 2021 is lower than other years due to the COVID-19 pandemic. In that year, Defendant Sanders received $47,000 in COVID "Paycheck Protection Program proceeds." *See* Steven E. Sanders, *Annual Financial Statements Year Ended December 31, 2020*, LA. LEG. AUDITOR 3, https://app2.lla.state.la.us/publicreports.nsf/0/77c2410e60510dfa86258720005e62af/$file/00024 475.pdf?openelement&.7773098 (last visited Feb. 23, 2025).

Additionally, the Centers for Disease Control and Prevention issued an eviction moratorium from September 2020 until mid-2021, prohibiting or significantly reducing eviction filings, and many renters qualified for and received emergency rental assistance that prevented evictions through the American Rescue Plan Act of 2021. *See Federal Moratorium on Evictions for Nonpayment of Rent*, NAT'L LOW INCOME HOUS. COALITION & NAT'L HOUS. LAW PROJECT (Aug. 2021), https://nlihc.org/sites/default/files/Overview-of-National-Eviction-Moratorium.pdf (last visited Feb. 23, 2025); *Emergency Rental Assistance Program*, U.S. DEP'T TREASURY, https://home.treasury.gov/policy-issues/coronavirus/assistance-for-state-local-and-tribal-governments/emergency-rental-assistance-program#:~:text=The%20ERA2%20program%20was%20authorized,housing%20and%20evictio n%20prevention%20activities (last visited Feb. 23, 2025).

| Year | Total State/Local Gov't Funding | Court Fee Revenue | Total Revenue | % of Total Revenue from Gov't Sources | % of Total Revenue from Court Fees |
|------|------|------|------|------|------|
| **2019** | $4,800 | $561,008 | $577,808 | 0.83% | **97.1%** |
| **2020** | $4,800 | $388,171 | $454,501 | 1.05% | **85.40%** |
| **2021** | $4,800 | $470,394 | $491,657 | 0.98% | **95.6%** |
| **2022** | $4,800 | $637,387 | $653,210 | 0.73% | **97.6%** |
| **2023** | $5,040 | $629,211 | $644,865 | 0.8% | **97.6%** |

124.    Between 2019 and 2023, the state and parish governments provided approximately 1 percent of the total cost to operate the court and to pay for Defendant Sanders's salary.

125.    Defendant Sanders consistently had about a 99 percent budgetary shortfall from the state and parish government that he made up for with court fees, including filing fees and writ of execution fees in eviction proceedings.

126.    Defendant Sanders's court operating expenses and take-home salary between 2019 and 2023 are described below.

| Year | Total Court Expenses | Take-Home Salary |
|------|------|------|
| 2019 | $19,131 | $233,893 |
| 2020 | $19,932 | $209,666 |
| 2021 | $21,317 | $197,359 |
| 2022 | $16,226 | $266,613 |
| 2023 | $20,374 | $254,564 |

127.    Defendant Sanders reported spending approximately $16,000 to $21,000 on court operating expenses each year between 2019 and 2023, included accounting, continuing education,

office expenses, professional fees, rent, storage, utilities and telephone, taxes and licenses, and miscellaneous charges.

128.    Defendant Sanders' salary, after deductions for payments to the constable, the clerk of court, and overhead expenses for the court, ranged from approximately $197,000 to $266,000 during this timeframe.

129.    Defendant Sanders was the highest compensated justice of the peace in East Baton Rouge Parish during this time.

130.    Defendant Sanders was one of the highest compensated justices of the peace in the State of Louisiana during this time.

131.    Indeed, Defendant Sanders's take-home compensation between 2019 and 2023 was higher than the salaries of Louisiana district court judges, appellate court judges, and Supreme Court Justices, including the Chief Justice.[20]

132.    His take-home compensation in 2019 ($233,893), 2022 ($266,613), and 2023 ($254,564) was higher than the salary of a federal circuit court judge in 2019 ($223,700), 2022 ($236,900), and 2023 ($246,600).[21]

---

[20] Performance Audit Services, *Louisiana Judiciary: Comparison with Other States*, LA. LEG. AUDITOR 12 (Sept. 25, 2023), https://app2.lla.state.la.us/publicreports.nsf/0/6a2af819aa10913886258a35005c677a/$file/00002 c2f.pdf?openelement&.7773098; Sam Karlin, *Louisiana judges, sheriffs to get pay raises—costing $1.8M—under new bill signed by Gov. Edwards*, THE ADVOCATE (June 13, 2019) https://www.theadvocate.com/baton_rouge/news/politics/legislature/article_feef3dbe-8e23-11e9-b562-dfa34562a8aa.html; *see also* Travers Mackel, *I-Team: Justice of the Peace job makes big money—for some*, WDSU.COM (May 9, 2014), https://www.wdsu.com/article/i-team-justice-of-the-peace-job-means-big-money-for-some/3370654# ("I don't think that the legislature who created these offices ever contemplated that a justice of the peace would make more money than a Supreme Court justice for a part-time small claims court.").

[21] *Judicial Compensation*, U.S. COURTS, https://www.uscourts.gov/judges-judgeships/judicial-compensation (last visited Feb. 23, 2025).

133.    Without collecting filing fees and writ of execution fees from eviction proceedings, including those of Plaintiff and putative Class members, Defendant Sanders could not pay for his salary or the court's operating expenses.

### H.    Defendant Sanders charges landlords the maximum fees permitted under state law in eviction proceedings and then shifts those fees onto the tenant.

134.    Defendant Sanders uniformly charges landlords the maximum amount of $120 authorized under La. Rev. Stat. § 13:2590(A)(2) for a petition for eviction filed in his court against a single defendant.

135.    Defendant Sanders uniformly charges the maximum amount of $60 authorized under La. Rev. Stat. § 13:2590(A)(3) for a writ of execution issued to evict a single defendant.[22]

136.    Defendant Sanders charges a minimum of $120 in filing fees every time a petition for eviction is filed, regardless of the outcome of the eviction proceedings.

137.    Defendant Sanders charges a minimum of $180 in filing and writ of execution fees if he issues a judgment of eviction and then a writ of execution against a single defendant.

138.    Defendant Sanders can only generate these funds from writ of execution fees if tenants, including Plaintiff and putative Class members, are evicted from their homes.

139.    The filing fees that Defendant Sanders charges in eviction proceedings are paid up front by landlords and then passed on to tenants like Plaintiff and putative Class members if a judgment is issued in favor of the landlord. *See* La. Code Civ. Proc. art. 1920; *see also* La. Code

---

[22] In addition to the maximum $120 per petition for eviction authorized under La. Rev. Stat. § 13:2590(A)(2), Defendant Sanders charges an additional $30 for each eviction proceeding (and an additional $5 for each additional defendant) as a matter of course "for compensation and expenses of the clerk of court's office." *See* La. Rev. Stat. § 13:2590.1(B)(2). These fees, totaling a minimum of $150 per petition for eviction, are listed in his schedule of court costs. *See Forms: Court Costs*, STEVEN E. SANDERS, https://www.stevensandersjp.com/forms (last visited Feb. 23, 2025).

Civ. Proc. art. 2596.

140.    Louisiana law does not permit the issuance of money judgments or damages in a summary proceeding.[23] Yet Defendant Sanders determines the amount owed by the tenant to the landlord in the eviction proceeding.

141.    The filing fees are incorporated as court costs into the total amount that Defendant Sanders determines is owed by Plaintiff and putative Class members to their landlords at the eviction hearing.

142.    If a judgment of eviction issues and Plaintiff and putative Class members cannot or do not pay, then the total amount owed including court costs (the filing fee and the writ of execution fee, if applicable) is forwarded to a credit agency and adversely affects their consumer rating.

143.    Tenants like Plaintiff and putative Class members ultimately bear the cost of the filing and writ of execution fees Defendant Sanders charges, whether they repay the landlord directly or the unpaid fees are reflected in their credit scores.

**I.    Defendant Sanders spends the filing and writ of execution fee revenue he collects from Plaintiff and putative Class members in eviction proceedings to fund his salary and the operating expenses of his court.**

144.    To supplement his salary and raise funds for the operations of the Ward 3, District 2 Justice of the Peace Court, Defendant Sanders charges and collects filing and writ of execution fees in civil cases before his court, including from tenants like Plaintiff and putative Class members in eviction cases.

145.    Any disruption in civil cases, and in the collection of filing fees and writ of execution fees, can cause "immediate funding losses, lost compensation, [and] suspended

---

[23] *See Major v. Hall*, 263 So. 2d 22, 24 (La. 1972) (citing La. Code Civ. Proc. art. 2592).

operations," as was the case for all justice of the peace courts when evictions were ordered to a halt due to the COVID-19 pandemic in 2020 and again after Hurricane Ida in 2021.[24]

146.    Indeed, Defendant Sanders received $47,000 in COVID "Paycheck Protection Program proceeds" to make up for lost revenues from fees while there was an eviction moratorium in place.[25]

147.    After deducting fees for the constable and the clerk of court pursuant to La. Rev. Stat. § 13:2590(B)(1), and La. Rev. Stat. § 13:2590.1(B)(2), Defendant Sanders controls how the filing and writ of execution fees he charges and collects in eviction proceedings are spent.

148.    Defendant Sanders relies on filing and writ of execution fees to supplement the funding he receives from the parish and/or state to pay for his salary and a substantial portion of the operating expenses of his court.

149.    Defendant Sanders' reliance on fees to fund his salary and the court's operating budget creates a structural incentive for him to attract landlords to file and keep filing petitions for eviction in court rather than to resolve disputes informally or through mediation.

150.    Defendant Sanders' reliance on fees to fund his salary and the court's operating budget creates a structural incentive for Sanders to attract landlords to file and keep filing petitions for eviction in his court rather than the district court or city court.

---

[24] *See Peace Talk*, LA. JUSTS. PEACE & CONSTABLES ASS'N 1 (Nov. 2020), http://www.lajpc2.com/Peacetalk/Peacetalk%20November%202020.pdf;    John    Simerman, *Despite governor's order, Louisiana evictions haven't quite stopped*, NOLA.COM (Sept. 18, 2021), https://www.nola.com/news/despite-governors-order-louisiana-evictions-havent-quite-stopped/article_42c6ec92-17f4-11ec-b536-4f472cf320c2.html.

[25] *See* Steven E. Sanders, *Annual Financial Statements Year Ended December 31, 2020*, LA. LEG. AUDITOR    3, https://app2.lla.state.la.us/publicreports.nsf/0/77c2410e60510dfa86258720005e62af/$file/00024 475.pdf?openelement&.7773098 (last visited Feb. 23, 2025).

151.    Defendant Sanders' reliance on fees to fund his salary and the court's operating budget creates a structural incentive for Sanders to enter a judgment of eviction for the landlord, regardless of the evidence presented, rather than potentially finding in favor of the tenant.

**J.    Defendant Sanders generates funding from eviction filing fees and writ of execution fees only if landlords choose to bring eviction proceedings in his court and not another court with concurrent jurisdiction.**

152.    Defendant Sanders generates the fees that pay his salary and offset the operating expenses of his court only if landlords file a petition for eviction in his court and not in another court with concurrent jurisdiction.

153.    The 19th Judicial District Court, as a court of general jurisdiction, has concurrent jurisdiction over petitions for eviction with the Ward 3, District 2 Justice of the Peace Court.

154.    Additionally, small sections of Defendant Sanders's ward and district share jurisdiction with the Baton Rouge City Court.

155.    A landlord who owns a residential property located in Defendant Sanders's territorial jurisdiction can elect to file a petition for eviction in either his court or in the 19th Judicial District Court, or sometimes in the Baton Rouge City Court.

156.    The filing fee of $120 in Defendant Sanders's court is lower than the 19th Judicial District Court's filing fee of $450 excluding service.[26]

157.    The filing fee of $120 in Defendant Sanders's court is also lower than the filing fee of $161 for an eviction in Baton Rouge City Court.[27]

---

[26]    *Advance Cost Fee Schedule*, 19th Jud. Dist. Ct. (July 3, 2024), https://static1.squarespace.com/static/666af37e5bc38966393081e0/t/668da1c625c6e619b2f53b90/1720558022465/17_Advance+Cost+Fee+Schedule.pdf.

[27]    *See Civil Court Costs Schedule*, BATON ROUGE CITY COURT (July 1, 2024), https://www.brla.gov/DocumentCenter/View/585/Civil-Court-Cost-Schedule-Pamphlet-PDF?bidId= .

158.    The lower filing fee, fewer procedural protections afforded to tenants, financial incentive to favor landlords, and faster duration of eviction proceedings before Defendant Sanders are all factors that make filing in his court more attractive to landlords than in the district court.[28]

159.    Defendant Sanders presides over between 300 to 400 petitions for eviction each month.

160.    Over an eight-year period, Defendant Sanders presided over an astonishing 28,000 to 38,000 petitions for eviction.

161.    By contrast, over an eight-year period between January 2015 and June 2023, landlords filed only 123 petitions for eviction in the 19th Judicial District Court.

**K.     Defendant Sanders presides over hundreds of eviction cases each month.**

162.    Plaintiff and members of the putative Class are at great risk of experiencing the harmful consequences of evictions, as set forth in Section A, when they are sued as defendants in eviction proceedings before Defendant Sanders. This great risk of harm is magnified because Defendant Sanders has a personal and institutional financial conflict of interest in eviction proceedings.

163.    As the Ward 3, District 2 Justice of the Peace, Defendant Sanders hears between 300 to 400 eviction cases per month.

164.    Defendant Sanders's typical caseload is illustrated by two, six-month samples from 2019 and 2023—the year before and the year after the apex of the COVID-19 pandemic.

---

[28] *See, e.g.,* Henry Gomory, et al., *When it's cheap to file an eviction case, tenants pay the price*, EVICTION LAB (June 6, 2023), https://evictionlab.org/tenants-pay-for-cheap-evictions/.

| Eviction Proceedings before Defendant Sanders | Jan. 1–June 30, 2019 | Jan. 1–June 30, 2023 |
|---|---|---|
| Number of Petitions for Eviction filed | Over 1,700 | Over 1,300 |
| Number of Judgment of Evictions granted | Over 900 | Over 790 |
| Number of Writs of Execution issued | Over 160 | Over 200 |

165.    As demonstrated in the table above, during the first six months of 2019, Defendant Sanders's Justice of the Peace Court received over 1,700 petition-for-eviction filings.

166.    During the same period, Defendant Sanders granted the landlord a judgment of eviction in over 900 cases.

167.    During the same period, Defendant Sanders issued a writ of execution in over 160 eviction cases.

168.    During the first six months of 2023, Defendant Sanders's Justice of the Peace Court received over 1,300 petition-for-eviction filings.

169.    During the same period, Defendant Sanders granted the landlord a judgment of eviction in over 790 cases.

170.    During the same period, Defendant Sanders issued a writ of execution in over 200 eviction cases.

171.    As a result of the volume of eviction proceedings Defendant Sanders hears per month, some landlords within the Ward 3, District 2 jurisdiction are repeat players in Defendant Sanders's court.

| Defendant Sanders's Eviction Proceedings | Sherwood Apartments | The Reserve at White Oak |
|---|---|---|
| # Evictions filed between Jan. 1–June 30, 2019 | Over 75 | Over 15 |
| # Evictions filed between Jan. 1–June 30, 2023 | Over 75 | Over 150 |

172.    For example, as demonstrated in the table above, during the first six months of 2019, Defendant Sanders received over 75 petitions for eviction from Sherwood Apartments and 15 petitions from The Reserve at White Oak.

173.    During the first six months of 2023, Defendant Sanders received over 75 petitions from Sherwood Apartments and over 150 from The Reserve at White Oak.

174.    Defendant Sanders frequently hears multiple eviction actions by the same landlord on the same day.

175.    For example, Defendants Sanders scheduled over 80 eviction hearings on January 23, 2019. Over 20 of those hearings were in eviction actions brought by landlord Baton Rouge Cherry Creek Apartments.

176.    Defendants Sanders scheduled over 80 eviction hearings on June 23, 2023. Over 20 of those hearings were in eviction actions brought by landlord Spring Brook Apartments.

177.    Defendant Sanders can spend as little as 2–5 minutes on a single eviction proceeding before issuing a judgment.

   i. <u>Plaintiff Latoria George's Eviction Proceedings in Justice Sanders's Ward 3, District 2 Justice of the Peace Court.</u>

178.    Plaintiff Latoria George is a 40-year-old woman living in Baton Rouge, Louisiana. Plaintiff has resided at her current residence for approximately four years. Ms. George is currently in eviction proceedings before Defendant Sanders, with a hearing scheduled for Friday, February 28, 2025.

179.    Ms. George works two jobs. However, she still struggles to afford her rent periodically due to her limited income and the fact that she has had to spend money out of pocket for repairs that her landlord refused to make.

180.    For example, Ms. George had to pay $175 out of pocket for a new stove after her stove caught on fire and her landlord failed to replace it.

181.    Ms. George has received summonses to appear before Defendant Sanders for an eviction proceeding due to nonpayment of rent on approximately four prior occasions. Each time she was able to avert eviction after a petition for eviction was filed with Defendant Sanders, but before appearing in his court, by paying her rent and court costs directly to the property manager.

182.    During one of the prior eviction proceedings before Defendant Sanders, Ms. George's landlord filed an eviction against her for replacing the stove, even though it had caught on fire. She went to court and appeared in front of Defendant Sanders. The property manager and Ms. George came to an agreement before they went in front of Defendant Sanders, and the property manager informed Defendant Sanders of the agreement. Defendant Sanders ordered that Ms. George pay court costs, including filing fees.

183.    Ms. George's three neighbors were all evicted by Defendant Sanders. She believes that her landlord files evictions in Defendant Sanders's court frequently.

184.    Ms. George's landlord has failed to make other repairs to address health and safety-threatening defects with her rental unit. For example, she has no heat and no smoke detectors. She sleeps on her couch because of mold in her bedroom. She notified her landlord of these issues, but repairs were not made.

185.    Ms. George would like to raise defenses at her eviction hearing related to the habitability of her unit, including repair and deduct for having to make repairs to the rental unit

herself, and abatement under the Louisiana Civil Code.

186.    However, Ms. George fears that she will not have a fair opportunity to fully litigate her defenses because of Defendant Sanders's conflict of interest and because of her lack of appeal rights.

187.    Because Defendant Sanders gets paid from her eviction proceedings, Ms. George worries that he will be biased against her and other tenants and will not treat her fairly and impartially like judges are supposed to.

188.    No one she knows believes that Defendant Sanders can be fair and impartial when he is paid from evictions.

189.    If Defendant Sanders issues a judgment of eviction in her case, Ms. George cannot afford to pay the filing fees and bond required for a new trial in the district court. Even if she could, Ms. George would not be able to appeal beyond that because the law does not allow her to.

190.    A family member of Ms. George has been a defendant in eviction proceedings in Baton Rouge City Court before, and Ms. George believes her family member had access to a fairer trial in city court than Plaintiff George was granted in Justice of the Peace Sanders's court.

## V.        CLASS ALLEGATIONS

191.    Pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2), Plaintiff George seek to certify a Class of Plaintiffs (the "Class"), on behalf of herself and all others similarly situated, for the purpose of asserting the declaratory claims alleged in this Complaint on a common basis.

192.    The Class is defined as: "All tenants who currently or will in the future be a defendant in an eviction proceeding before the Justice of the Peace for Ward 3, District 2 in East Baton Rouge Parish, Louisiana."

**A.    Numerosity, Fed. R. Civ. P. 23(a)(1).**

193.    The precise size of the Class is unknown but is substantial. The Class is forward-looking and consists of mostly unknown, unnamed tenants who will be defendants in eviction cases filed in Defendant Sanders's justice of the peace court in the future.

194.    Between January 2015 and May 2023, 35,638 cases of all types were filed in Defendant Sanders's court, and approximately 90 percent of those court filings were evictions.

195.    Joinder of every member of the Class would be impracticable.

196.    Class members, many of whom struggle to afford their monthly rent, lack the financial resources needed to bring an independent action or to be joined in this action. Due to the inherently transitory nature of evictions and the rapidity with which summary proceedings are held, along with the indigency of Plaintiff and the putative Class members, the class action mechanism provides stability and protection against mootness and ensures that Plaintiff's constitutional claims do not evade review.

**B.    Commonality, Fed. R. Civ. P. 23(a)(2).**

197.    Plaintiff raises claims based on questions of law and fact that are common to, and typical of, the putative class members they seek to represent.

198.    Common questions of fact presented in this case include:

 a.    Whether Defendant Sanders has a policy or practice of assessing the maximum amount of fees authorized in eviction proceedings under state law;

 b.    Whether Defendant Sanders collects a filing fee in eviction proceedings every time a landlord files for eviction in his justice of the peace court;

 c.    Whether Defendant Sanders collects an additional writ of execution fee only if he issues a judgment of eviction;

 d.    Whether Defendant Sanders's salary is derived in part from filing fees and writ of execution fees in eviction proceedings;

 e.    Whether the operating expenses of Defendant Sanders's justice of the

peace court are derived in part from filing fees and writ of execution fees in eviction proceedings;

f. What percentage of Defendant Sanders's salary is derived from the state and local government, eviction filing fees, eviction writ of execution fees, and other sources; and

g. What percentage of Defendant Sanders's court operating expenses are derived from the state and local government, eviction filing fees, eviction writ of execution fees, and other sources.

199. Common questions of law presented in this case include:

a. Whether landlords within the jurisdiction bounds of the Ward 3, District 2 Justice of the Peace Court in East Baton Rouge Parish can choose to file an eviction action in the district court or in Defendant Sanders's justice of the peace court;

b. Whether landlords within the jurisdiction bounds of the Ward 3, District 2 Justice of the Peace Court in East Baton Rouge Parish can choose to file an eviction action in the Baton Rouge City Court or in Defendant Sanders's justice of the peace court;

c. Whether Defendant Sanders exercises judicial responsibilities in overseeing eviction proceedings in his justice of the peace court;

d. Whether Defendant Sanders exercises executive control in overseeing eviction proceedings in his justice of the peace court;

e. Whether Defendant Sanders exercises control over how to spend funds generated from filing fees and writ of execution fees in eviction proceedings;

f. Whether Defendant Sanders's use of filing fees and writ of execution fees that he collects in eviction proceedings to pay for his salary creates a personal financial conflict of interest that violates the Due Process Clause;

g. Whether Defendant Sanders's use of filing fees and writ of execution fees that he collects in eviction proceedings to pay for his court operating expenses creates an institutional conflict of interest that violates the Due Process Clause;

h. Whether a tenant facing eviction before Defendant Sanders has the same right to appeal a judgment of eviction as a tenant facing eviction in a district court or city court;

i. Whether the differences in appellate rights that tenants are entitled to in district court, city court, and before a justice of the peace court create a classification based entirely on which court the landlord chooses to file a petition for eviction;

j. Whether there is a rational basis for these differences in appellate rights

and, if not, whether those differences violate the Equal Protection Clause; and

k.  Whether declaratory relief is appropriate and, if so, what the terms of such relief should be.

**C.    Typicality, Fed. R. Civ. P. 23(a)(3).**

200.    Plaintiff George's claims are typical of the claims of the proposed Class. They are based on the same factual circumstances, including the same causes of harm, the same legal theory, and the same remedy.

201.    Plaintiff has suffered the same constitutional deprivations putative Class members have suffered or will suffer: that is, the loss of their due process rights to fair and impartial adjudication under the Due Process Clause of the Fourteenth Amendment due to Defendant Sanders's personal and institutional financial conflict of interest, and a violation of their rights to equal protection under the Equal Protection Clause of the Fourteenth Amendment.

202.    Consequently, the named Plaintiff and putative Class members seek to redress the same legal injuries, through the same legal theories common to the entire Class.

**D.    Adequacy, Fed. R. Civ. P. 23(a)(4) & 23(g).**

203.    Plaintiff George will fairly and adequately protect the interests of the Class as required by Rules 23(a)(4).

204.    Plaintiff is willing and able to represent the Class. She has agreed to serve as plaintiff individually and to be active in the litigation on behalf of her fellow absent Class members.

205.    No potential exists for conflicts of interest between the proposed Class representative and putative Class members.

206.    Plaintiff's and Class members' claims rest upon the same constitutional injuries caused by Defendant Sanders's application of the challenged statutes.

207.    Plaintiff and Class members share a common interest in reforming Defendant Sanders's application of those statutes.

208.    Plaintiff's counsel will fairly and adequately represent the interests of the class pursuant to Rule23(g).

209.    Plaintiff's counsel are qualified and prepared to pursue this action on behalf of the proposed Class.

210.    The attorneys representing Plaintiff and the putative Class are experienced in handling class actions and civil rights litigation and have knowledge of, and experience in, litigating legal claims concerning unlawful policies and practices in state court systems.

211.    Additionally, Class counsel have sufficient financial and human resources to litigate this matter.

**E.    Fed. R. Civ. P. 23(b)(2).**

212.    Defendant Sanders has acted on grounds generally applicable to the Class, making declaratory relief with respect to the Class as a whole appropriate and necessary.

213.    All putative Class members face the same harms: they face eviction in front of a judge with a personal and institutional financial conflict of interest and have limited rights to appeal a judgment of eviction issued by that judge. Because each is harmed in the same way, the requested relief would remedy that harm as to all Class members equally.

214.    An order declaring that the state statutes authorizing Sanders to collect fees in eviction proceedings to pay his salary and court expenses (La. Rev. Stat. §§ 13:2590(A)(2)–(3) and 3:2590(B)(1)), as applied in eviction proceedings in his Ward 3, District 2 Justice of the Peace Court in East Baton Rouge, are unconstitutional would remedy that harm.

215.    An order declaring unconstitutional on its face the statute (La. Code Civ. Proc. art.

4924(A)–(C)) that limits the appellate rights of tenants in eviction cases before justice of the peace courts (but not similarly situated tenants in eviction cases in city courts or district courts) would remedy that harm.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**42 U.S.C. § 1983**
**Due Process Clause, Fourteenth Amendment, U.S. Constitution**

216.    Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs of this Complaint.

217.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution guarantees Plaintiff and putative Class members notice and a meaningful opportunity to be heard before they are deprived of their homes. In civil cases, an opportunity to be heard is only meaningful if the judge presiding over the case is impartial and disinterested.

218.    A judge who has a financial interest in the outcome of a case is not impartial and disinterested, and the risk that an erroneous deprivation will occur is too high to satisfy due process.

219.    A showing of actual judicial bias is not required to establish a due process violation.

220.    Where a statutory structure creates "a possible temptation" to the "average man as judge" to forget the burden of proof required to convict the defendant" or "not to hold the balance nice, clear, and true between the state and the accused," there is a financial conflict of interest that violates due process. *See Tumey v. Ohio*, 273 U.S. 510, 532 (1927).

221.    A personal conflict of interest exists where a judge's compensation is augmented every time a judgment is made in favor of a particular party.

222.    An institutional conflict of interest exists where a judge is responsible for both impartially adjudicating cases and generating money from those cases to fund a substantial portion of staff and court operating expenses under the judge's control. Under such circumstances, the

35

judge has "a direct and personal interest in the fiscal health" of the court "that benefits from the fees his court generates and that he also helps allocate." *Caliste v. Cantrell*, 937 F.3d 525, 531 (5th Cir. 2019).

223.    Due Process requires that Defendant Sanders impartially adjudicate eviction cases and maintain the appearance of impartiality.

224.    La. Rev. Stat. § 13:2590(A)(2) and (3) and § 13:2590(B)(1) authorize Defendant Sanders to collect filing and writ of execution fees in eviction proceedings and retain 50% of those fees for Defendant Sanders's salary and to fund the Ward 3, District 2 Justice of the Peace Court's operating expenses.

225.    These statutes, as applied to Plaintiff and other tenants in eviction proceedings before Defendant Sanders in the Ward 3, District 2 Justice of the Peace Court, create an unconstitutional financial conflict of interest that could interfere with Defendant Sanders's duty to impartially adjudicate cases and to maintain the appearance of impartiality.

226.    This financial conflict of interest is personal because Defendant Sanders has an incentive to collect fees to maximize his salary, and it is also institutional because he substantially relies on the fees to fund the operations of his court.

227.    The funding structure for compensating Defendant Sanders creates an appearance that Defendant Sanders cannot impartially adjudicate the outcome of Plaintiff's eviction proceedings because he has a personal financial interest in collecting filing fees and writ of execution fees to supplement his salary and an institutional financial interest in collecting filing fees and writ of execution fees to pay for court operations.

228.    There is an ongoing controversy between Plaintiff and Defendant Sanders. Plaintiff is currently a tenant in eviction proceedings in Defendant Sanders's court and will appear before

a judge with a personal and institutional conflict of interest.

229.    Accordingly, pursuant to 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 1983, Plaintiff, on behalf of herself and a class of similarly situated tenants, seeks a declaration that La. Rev. Stat. §§ 13:2590(A)(2) and (3) and § 13:2590(B)(1), as applied to tenants in eviction proceedings in Defendant Sanders's Ward 3, District 2 Justice of the Peace Court, are unconstitutional.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Equal Protection Clause, Fourteenth Amendment, U.S. Constitution**

230.    Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs of this Complaint.

231.    The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits the state from treating similarly situated people differently. Where there is no suspect class or fundamental right at issue, the state must demonstrate a legitimate government interest that is rationally related to the classification at issue.

232.    La. Code Civ. Proc. art. 4924 treats similarly situated tenants differently depending on whether a landlord elects to file a petition for eviction before Defendant Sanders or another court with concurrent jurisdiction.

233.    The 19th Judicial District Court has concurrent jurisdiction over petitions for eviction with the Ward 3, District 2 Justice of the Peace Court.

234.    The City Court has overlapping jurisdiction to hear petitions for eviction with the district court and small areas of overlapping jurisdiction with the Ward 3, District 2 Justice of the Peace Court.

235.    Under state law, tenants brought into eviction proceedings in city courts and district courts have a full right to appeal a judgment of eviction to the Louisiana courts of appeal and, ultimately to the Louisiana Supreme Court. *See* La. Const. Ann. art. V, § 10; La. Code Civ. Proc.

arts. 4735, 2087, 5001.

236.     By contrast, pursuant to La. Code Civ. Proc. art. 4924, tenants in justice of the peace courts can only seek a de novo trial in the district court, with no further right to appeal a judgment of eviction.

237.     Limiting the appellate rights of tenants facing eviction before justices of the peace, but not the appellate rights of tenants facing eviction before a city or district court, is not rationally related to a legitimate government interest.

238.     There is an on-going controversy between Plaintiff and Defendant Sanders. Plaintiff is currently a tenant in eviction proceedings in Defendant Sanders's court and will not have full appellate rights from a judgment of eviction.

239.     Pursuant to 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 1983, Plaintiff, on behalf of herself and a Class of similarly situated tenants in eviction proceedings before Defendant Sanders in the Ward 3, District 2 Justice of the Peace Court, seeks a declaration that La. Code Civ. Proc. art. 4924 is facially unconstitutional to prevent future injury caused by having fewer appellate rights than similarly situated tenants facing eviction before a city court or district court.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court issue the following relief:

a.     Assume jurisdiction over this action;

b.     Certify a class under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, represented by Plaintiff;

c.     Issue a declaratory judgment that La. Rev. Stat. § 13:2590(A)(2)–(3) and § 13:2590(B)(1), as applied to Plaintiff and the putative Class, create a financial conflict of interest that violates the Due Process Clause of the Fourteenth Amendment.

d.     Issue a declaratory judgment that La. Code Civ. Proc. art. 4924(C), on its face, violates the Equal Protection Clause of the Fourteenth Amendment by treating similarly situated tenants differently depending on whether a landlord elects to file a petition for eviction before a justice of the peace rather than another court with concurrent jurisdiction;

e.     Award prevailing party costs, including attorneys' fees, pursuant to 42 U.S.C. § 1988; and

f.     Such other relief as the Court deems just and proper.


DATED this February 25, 2025.                    Respectfully submitted,

s/ Anjana Joshi_____
Anjana Joshi
La. Bar No. 39020
SOUTHERN POVERTY LAW CENTER
201 St. Charles Ave., Suite 2000
New Orleans, LA 70170
P: 504-239-8685
E: anjana.joshi@splcenter.org

Micah West
Ala. Bar No. ASB-1842-J82F*
Ellen Degnan
Ala. Bar No. ASB-3244-I12V*
SOUTHERN POVERTY LAW CENTER
400 Washington Ave.
Montgomery, AL 36104
P: 334-956-8334
E: micah.west@splcenter.org
E: ellen.degnan@splcenter.org

Miriam Gutman
Ga. Bar No. 170768*
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
P: 470-728-2920
E: miriam.gutman@splcenter.org

s/ William Patrick Quigley
William Patrick Quigley
La. Bar No. 07769
LOYOLA NEW ORLEANS COLLEGE OF LAW
7214 St. Charles Ave.
New Orleans, LA 70118
P: 504-710-3074
E: quigley77@gmail.com

s/ Hannah Adams
Hannah Adams
La. Bar No. 36343
NATIONAL HOUSING LAW PROJECT
90 New Montgomery St. Suite 1015
San Francisco, CA 94105
P: 504-321-3302
E: hadams@nhlp.org

*Pro hac vice application forthcoming*

**Attorneys for Plaintiff**